UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 05-32-EBA

EMMA LOUISE COLEMAN,                                                                      PLAINTIFF,

V.          **MEMORANDUM OPINION AND ORDER**

PIKEVILLE UNITED METHODIST HOSPITAL, INC., and
RELIANCE STANDARD LIFE INSURANCE COMPANY,                        DEFENDANTS.

INTRODUCTION

This is an action brought by the Plaintiff, Emma Louise Coleman [Coleman], to challenge the denial of long term disability [LTD ]benefits in violation of the Employee Retirement Income Security Act [ERISA], 29 U.S.C. § 1001 *et seq*. The matter is before the Court on the parties' cross-motions for summary judgment. [R. 61, 62, 63.] In addition, Coleman seeks to have the Court vacate its order granting Reliance Standard Life Insurance Company [RSL] permission to intervene in the action [R. 67] and also seeks an order striking pleadings filed by Pikeville United Methodist Hospital, Inc., [Hospital] as untimely [R. 76]. All motions being fully briefed, the matter is ripe for review.

FACTUAL AND PROCEDURAL HISTORY

Coleman began work with the Hospital on January 20, 1992, [AR 239] and worked full time as a housekeeper until her last day of employment on January 15, 2002. [AR 247]. The position required her to be able to continuously stand, walk, frequently kneel, crouch, crawl, and reach or work overhead. [AR 245]. In addition, she was required to continuously relate to others, retain the ability to push, pull, lift or carry at least twenty pounds (20 lbs.) on a frequent based, and have full

use of both hands. [AR 245]. The job also required that she be able to operate electrical cleaning equipment, endure exposure to housecleaning/cleaning agents/chemicals, and occasional exposure to unpleasant or unit elements. [AR 325-27].

During the course of her employment, Coleman was covered by a long term disability plan offered and administered by the Hospital. [AR 251, R. 1, 2]. The policy, entered into by and between the Hospital and RSL, provided qualifying participants with a monthly long term disability benefit equal to 60% of the participant's covered monthly earnings. [AR 251-79]

Coleman submitted a timely application for long term disability benefits under the terms and conditions of the policy on March 30, 2002. [AR 247.] RSL gathered medical records from various medical providers including, but not limited to, Drs. Fannin, Jones, Raschella, Brandon, Injury and Rehab Centers of Kentucky, and Dr. Samuel. The records were forwarded to Dr. William Hauptman for review, who concluded:

> The patient has had longstanding musculoskeletal complaints [sic] that have been characterized as Fibromyalgia. A recent evaluation with a rheumatologist, Dr. Samuel, determined that the patient, in fact, does not have rheumatoid arthritis. Her examination on that date only four days prior to embarking on disability revealed a completely normal examination of the joints, lower extremities, spine and upper extremities. Furthermore, neurologic examination was normal including a motor and sensory exam. Therefore, medical records do not support a diagnosis of rheumatoid arthritis.
>
> Medical records document longstanding musculoskeletal complaints in this patient, beginning at least 2 years prior to embarking on disabiliy, during whicht the patient was able to continue working except for apparently one brief period when she was out of work. There is no documentation of any substantive change in the patient's conidtion around the date of loss. Certainly, the evaluation with the rheumatologist, Dr. Samuel on 2/12/02, does not document any change in the patient's condition. Furthermore, evaluations with Dr. Fannin and physician assistant, Jack Tackett, after the patient embarked on disability do not document any substantive change in her condition compared to the records prior to embarking on disability.
>
> There have been numerous objective studies including numerous x-rays and MRI'S'

of the neck and lower back. None of these studies have revealed any significant findings that would be supportive of impairment and in fact, they have all essentially been normal.

Physical examinations after embarking on disability do not reveal any new significant findings compared to the physical examinations prior to embarking on disability when the p atient was able to continue working. Furthermore, as documented above the formal musculosketal [sic] and neurologic examination did not reveal any findings that would support impairment."

[PL 00072-74.]

RSL found that Coleman ceased work due to Fibromyalgia, Depression, Asthma and Rheumatoid Arthritis, but denied benefits stating: "As explained above, in order to be eligible for benefits, there must be documentation of a physical or mental impairment which substantiates that Ms Coleman meet the group policy's definition of disability as defined above." [AR 187-89]. That definition of disability specified that the applicant must be unable to complete the tasks of her regular occupation, which was defined as the job that is performed in a typical work setting for any employer in the general economy. [AR 187-89]. As a result, RSL determined that Coleman did not meet the definition of total disability, and denied her claim. [AR 187-89].

Subsequently, Coleman sought reconsideration of the denial, and forwarded additional medical records and reports from Dr. Fannin, and Eric Johnson, Ph.D., a psychologist. RSL arranged for a medical evaluation of Coleman by Dr. Terry Troutt, M.D. which occurred on October 2, 2002. [AR 43]. As part of his evaluation, Troutt reviewed the entire volume of medical records made part of the record, including those additional records from Fannin and Johnson, and conducted a detailed physical examination. Id. His Diagnoses were as follows:

1. Reactive airway disease/COPD, long history of tobacco abuse.

2. Mild degenerative joint disease of the lumbosacral spine.

3

> 3. Polyarthralgia, no radiographic or serological evidence revealing destruction of bony processes. No definitive diagnosis of rheumatoid arthritis.
>
> 4. No evidence clinically today of fibromyalgia. Upon review of radical documentation there are no consistent physical examination findings to support the American College of Rheumatology guidelines for definitive fibromyalgia.
>
> 5. Psychological assessment revealing depression.

[AR 53.] In a physical capacities questionnaire, Dr. Troutt indicated that Coleman could stand/walk, kneel and use foot controls frequently (34%-66%); Bend at waist, squat at knees, climb stairs, climb ladders or crawl occasionally (33% or less); reach above and below her shoulder level and drive continuously (67%-100%). He estimated her lifting ability at the medium level, exerting 20-50 pounds of force occasionally, and/or 10-25 pounds of force frequently, and/or a negligible amount up to 10 pounds amount of force constantly. On November 14, 2002, RSL issued its decision following appeal, denying her application for benefits. [AR 25.] Coleman sought further consideration of the denial, forwarding additional records from Dr. Mettu. The file, including all records and the evaluation by Dr. Troutt were forwarded to Dr. Hauptman for review. He expressed no change in his earlier opinion. [AR 16.] Again her claim was denied on March 21, 2003. [AR 11.]

On February 2, 2005, Coleman instituted the instant action seeking judgment entitling her to long term disability benefits. [R. 1.] The verified complaint in this action alleges that "[a]t all times mentioned, the Defendant sponsored and was the administrator for a group disability plan meeting the requirement of a 'welfare benefit plan' as defined in the Employee Retirement Income Security Act ('ERISA'), 29 U.S.C. § 1132." [R. 1.] By its answer filed on February 22, 2005, the Hospital admitted to its status as Administrator of the Plan. [R. 2.] In addition, as it relates to RSL, the plan at issue states:

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary

>with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

[AR 264.]

On October 9, 2006, the Plaintiff and the Hospital jointly stipulated that the appropriate standard of review for the Court to apply in this action is the arbitrary and capricious standard. [R. 36.] However, in her pleadings, the Plaintiff now takes the position that the instant action does not present a claim under ERISA, alleging that the long term disability plan at issue is exempted from ERISA as the Hospital is a 501(c)(3) non-profit entity. [R. 65.] Alternatively, even if the action presents a claim under ERISA, Coleman now argues that the appropriate standard of review is *de novo*. [R. 65.] Therefore, as threshold issues, the Court will first address ERISA's applicability to the instant action as it would bear on this Court's subject matter jurisdiction, and if found to be applicable, the appropriate standard of review.

### ERISA

ERISA covers "employee welfare benefit plans" or welfare plans, which are defined as:

>[A]ny plan, fund, or program which was heretofore or is hereafter established or maintained by an employer, or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in 29 U.S.C. § 186(c) of this title [section 302(c) of the Labor Management Relations Act of 1947] (other than pensions on retirement or death, and insurance to provide such pensions).

Coleman contends that pursuant to 29 U.S.C. § 1003(b)(2), ERISA's provisions "shall not apply to

any employee benefit plan if . . . such plan is a church plan with respect to which no election has been made under 410(d) of the Internal Revenue Code of 1986." [R. 65, p. 3.] Coleman contends that the plan at issue is a church plan as defined in 1002(3) and that no election under 410(d) has been filed, resulting in ERISA being inapplicable. [R. 65, p. 3.] The defendants counter by arguing that the instant plan is governed by ERISA as the United Methodist Church has no control over the plan, and no control over the defendant, Hospital. [R. 71.] RSL relies on the case of <u>Chronister v. Baptist Health</u>, 442 F.3d 648 (8th Cir. 2006), a case in which the plaintiff sought long term disability benefits under the Baptist hospital's long term disability plan. In <u>Chronister</u>, the plaintiff was an employee of the hospital, a non-profit corporation, and argued that the LTD plan was a Church plan under ERISA as the hospital was associated with the Baptist church and shared common religious bonds and convictions. <u>Id</u>. at 651. In addition, Baptist Health required the CEO and Board to be members of Baptist churches and for the hospital to follow Baptist teachings. <u>Id</u>. at 651. The Court in <u>Chronister</u> concluded that ERISA applied as the Baptist convention had not been involved in governing the hospital for 40 years, and the selection of board members was in no way controlled by the convention. In addition, the court noted that there was no denominational requirement other than for certain administrators, and the hospital treated patients regardless of their religious convictions. <u>Id</u>. at 654. In the instant action, the evidence does not reveal a connection between the Hospital and the United Methodist Church aside from the Hospital's former affiliation. In the instant matter the only evidence before the Court is that the Pikeville Methodist Hospital name was changed to the Pikeville Medical Center in 2004. In addition, the record is absent of any evidence that the Methodist church controls or exerts influence in any way in the governance of the Hospital. As a result, the Court must find that the plan at issue is not a Church Plan as argued by Coleman,

6

and the LTD plan is a welfare benefit plan within the meaning of ERISA. Therefore, the Court has subject matter jurisdiction over the instant controversy.

### STANDARD OF REVIEW

The plan at issue states:

Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

[AR 264.]

Where, as in this case, the benefit plan gives the plan administrator discretionary authority to construe and interpret the plan, the administrator's decision is reviewed under the arbitrary and capricious standard. Spangler v. Lockheed Martin Energy Sys., Inc., 313 F.3d 356 (6th Cir. 2002); Hunter v. Caliber Sys., Inc., 220 F.3d 702, 710 (6th Cir. 2002). "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based upon the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Hunter, 220 F.3d at 710. Under this deferential standard of review, an appellate court will uphold the plan administrator's decision if it is "rational in light of the plan's provisions." Univ. Hosps. of Cleveland, v. Emerson Elec. Co., 202 F.3d 839, 846 (6th Cir. 2000)(quoting Yeager v. Reliance Standard Life Ins. Co., 88 F.3d 376, 381 (6th Cir. 1996)). If the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence," the decision will be upheld. Elliot v. Metro.Life Ins. Co., 473 F.3d 613, 617 (6th Cir.2006)(quoting Glenn v. Metro. Life Ins. Co., 461 F.3d 660, 666 (6th Cir. 2006)). In the

instant action, the language of the policy grants RSL the authority to both interpret the Plan to determine eligibility for benefits and also requires RSL to pay the benefits if they are awarded [AR 264], resulting in a conflict of interest. Although this does not alter the standard of review, the Court must consider the conflict as a factor in determining whether RSL's decision was arbitrary and capricious. Calvert v. Firstar Fin., Inc., 409 F.3d 286, 292-93 (6th Cir. 2006). Due to RSL's dual role, "the potential for self-interested decision-making is evident." Evans v. UnumProvident Corp., 434 F.3d 866, 876 (6th Cir. 2006)(quoting Univ. Hosps. of Cleveland, 202 F.3d at 846 n.4). However, in determining the effect of such a conflict, the Court must "look to see if there is evidence that the conflict in any way influenced the plan administrator's decision." Id. Although a conflict exists due to RSL both determining eligibility for and paying benefits, Coleman provided the Court with no evidence that the conflict affected RSL's denial of her claim. The mere existence of a conflict does not render the denial arbitrary and capricious. *See* Cooper v. Life Ins. Co. of No. Am., 486 F.3d 157, 165 (6th Cir. 2007).

## ANALYSIS

Thus, the question now before the Court is whether RSL's denial was the result of a deliberate, principled reasoning process, and whether the decision was based upon substantial evidence. See Elliot, 473 F.3d at 617. For the reasons stated below, the Court concludes that the denial meets the controlling standard, and the Defendants are entitled to summary judgment.

In the instant matter, Coleman alleged that she became disabled in January, 2002, secondary to pain, deterioration of bones, swelling and restrictions on lifting andwalking. [AR 247]. She detailed the duties incident to her job as "cleaning, mopping, dusting, stripping and waxing, pulling

garbage and lifting linens." [AR 250]. She described the physical requirements of the position as lifting; stooping; pushing; pulling; walking; standing. [AR 250]. Upon initial review of the file, her claim for LTD benefits was denied. [AR 247-48]. Grounds for the initial denial were that a review by Dr. William Scott Hauptman was conducted, which included consideration of records from her treating physicians. As stated above, Dr. Hauptman expressed the reasons for his opinion and commented upon the records from her treating physician contra-indicating disability: normal examination by Dr. Samuel only days prior to the onset of her disability; records from Dr. Fannin and Jack Tackett, a physician's assistant, indicating that her symptoms were no worse than before leaving employment; and absence of objective findings on diagnostic studies to support an opinion of impairment. [AR 187].

Subsequently, she appealed the decision, and was scheduled for a medical evaluation by Dr. Troutt, who found no evidence of arthritis on exam, and no reason to diagnose fibromyalgia. [AR 307]. He believed that her condition would improve, and opined that she is physically capable of performing at a medium level of exertion. [AR 295-96]. Coleman subsequently submitted additional records from Dr Mettu regarding her Chronic Obstructive Pulmonary Disease. These reflected that Coleman reported instances of bronchial asthma becoming progressively worse. [AR 32]. However, Dr. Mettu found no evidence of wheezing on examination. [AR 33]. Chest, heart and neurologic examinations were normal. [AR 32-33]. Subsequent testing revealed moderate obstructive airway disease, improved with bronchodilators. [AR 34, 17-18]. Dr. Hauptman reviewed the report and opinions of Dr. Troutt, as well as the additional medical records, concurred in Troutt's opinions and found no reason to change his own opinions as previously expressed. [AR 16-19].

Upon consideration of theses materials, Dr. Hauptman continued in his opinion that Coleman

was not restricted from medium level activity from either a physical or pulmonary standpoint. [AR 17-19] Although Coleman disagrees with the outcome of her claim, the undersigned cannot find that the determination is not based upon substantial evidence and, as a result, the outcome is not arbitrary or capricious. The review by Dr. Hauptman and Dr. Troutt both reveal a rather in-depth discussion of the medical records from Coleman's treating physicians, and, while there is some evidence of conditions which affect her, there is substantial evidence to support the reasoned denial of her application for benefits.

## CONCLUSION

Therefore, for the reasons stated herein, IT IS ORDERED:

(1) That the Motion to Vacate the Courts previous Order allowing RSL to intervene in the instant action [R. 67] is DENIED;

(2) That the Motion to Strike RSL's response to Plaintiff's Motion for Summary Judgment [R. 70], and Motion to strike the Hospital's response [R. 76] are DENIED;

(3) That the Motions for Summary Judgment on behalf of Reliance Standard Life Insurance Company [R. 62], and Pikeville United Methodist Hospital [R. 63] are GRANTED;

(4) That the Motion of the Plaintiff for Summary Judgment [R. 61] is DENIED.

This the 25th day of March, 2008.



Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge